The United States Court of Appeals for the Ninth Circuit is now in session. Please be seated. This is the second session this morning for our court. First, I want to thank Judge Gilman for coming from the Sixth Circuit to be with us today, and I hope that you have very safe travels on your return. Thank you. I'm pleased to be here. Yes. And the first three cases have been submitted on the briefs, Williams v. Bondi, Jaramillo v. Bondi, and Hernandez v. Bondi, and we will take up Koi Design v. Marron Lawyers. All right. Counsel, you may proceed. May it please the court. My name is Josh Epstein. I'm an attorney at McCarran & Associates, and I'm representing Koi Design LLC, which is the appellant in Appeal No. 23-55704 and the appellee in the appeal filed by Mr. Douglas Mastriani, which is 23-55724. I'd like to use about nine minutes of my time to discuss Koi's appeal, three minutes of my time to discuss Mr. Mastriani's appeal, and I'd like to reserve three minutes of time for rebuttal. Right. Watch your clock. Thank you. Starting with Koi's appeal, I'd like to focus on three points in argument today. First, the district court should be reversed for granting Marron Lawyers' summary judgment on a ground not raised by Marron Lawyers without providing Koi notice and a reasonable opportunity to respond. Two, the district court should be reversed for finding that Marron Lawyers had met its initial burden with respect to the damages element of Koi's claims. And three, the district court should be reversed because there was a genuine dispute of material fact with respect to Koi's claim for intentional breach of fiduciary duty. Starting with the first point, that the district court should be reversed for granting summary judgment on a ground not raised by Marron Lawyers without providing notice and an opportunity to respond. Causation and damages with respect to Koi's claim for legal malpractice are separate elements. Causation is about approximate causal connection between the attorney's negligence and the injury, and damages is about whether that injury is cognizable damages under the law. And therefore, there were two conceptually distinct ways for Marron Lawyers at summary judgment to attack Koi's ability to prove that Marron Lawyers had caused Koi harm. One was to assume that the default judgment was harm, but challenge Koi's ability to show that Marron had done anything to cause the default judgment. The second is to say, no matter what Marron Lawyers did, the default judgment is not harm, because even with competent counsel, Koi was going to lose terribly in the trademark litigation against SPI, such that a $5.2 million judgment with treble damages under the Lanham Act and no- If Marron argued that its conduct didn't cause that harm, then how was Koi not on notice that it needed to address causation? Your Honor, thank you for the question. It's because there are two very distinct ways of challenging Koi's ability to show harm. And one focuses, one takes the harm for granted, which is what Marron's briefing did. It focused on the default judgment as harm, never said to Koi, you can't prove you would have done better than that. Marron Lawyers' challenge at summary judgment was about saying all the bad stuff that happened that led to the default judgment, all of Mr. Mastriani's misconduct, failure to follow court orders, failure to properly respond to discovery, that all happened after Marron Lawyers had terminated him. So that's a very distinct challenge to the causation element of Koi's claims. It is not saying to Koi, you can't prove you would have done better than the default judgment at trial. And you can see this from Marron's moving papers. One of Marron's conclusions of law was all of the harm for which Koi seeks recovery in this action, the entry of default, the terminating sanctions, default judgment, was proximately caused by a course of conduct that occurred after Mr. Mastriani left Marron. That is not saying to Koi, come forward with all of your evidence to show that you had viable defenses to the trademark claims against you. It is not saying to Koi, come forward with all of your evidence of costs to show that you would have been able to reduce the judgment against you under the landmarks. You just said caused by Mr. Mastriani after he left Marron. So hearing cause and causation in there, but I guess you're saying it was just not sufficient notice of causation, is that right? Your Honor, I do believe that they're related elements of the cause of action, but they are distinct elements. And that's clear from Bud v. Nixon. Causation is about proximate cause of the alleged injury. Damages is about whether that injury is actual damages. And so, yes, I'm using the word causation, but they're conceptually distinct. And even if you view them as the same, this is a very different theory of causation of which Koi did not have notice at summary judgment. Marron's attack on causation was about whether Mr. Mastriani did all of the bad stuff that led to the default judgment after he was terminated or before. That was the challenge to causation in Marron's moving papers. It was not, as I said, a challenge to Koi's ability to prove that it would have. Could we talk a little bit about the causation, just assuming that you had notice? Clearly, Mr. Mastriani did a number of things while he was at Marron that disadvantaged your client. But there was significantly additional activity that he did afterwards that also significantly harmed your client. How can we say that what he did at Marron was the but for cause of what has ultimately resulted in a judgment? Thank you for the question, Your Honor. I would say two things. One, if you look at the court's orders, striking Koi's answer, terminating sanctions, default judgment against Koi, they all rely on stuff in part that happened while Mr. Mastriani was employed by Marron. There's language like the conduct of counsel tainted the case from day one. Reference to the complete failure to file a joint Rule 26 report at the very outset of the litigation, failure to meet and confer with counsel before filing a joint Rule 26 report. And so the orders that led to the harm against Koi referenced conduct not just that happened after Mr. Mastriani was terminated, but before. And the second point that I would raise, Your Honor, is to just say that it's clear from the declaration of Kathy Peterson that if Koi had been notified by Marron lawyers, that Marron lawyers had terminated Mr. Mastriani because he was not showing up to work, he was not communicating with the firm or with clients, he had been deemed to have abandoned his job and was a malpractice liability for the firm. If they had told Ms. Peterson that, Koi would have immediately terminated Mr. Mastriani and found competent counsel. And therefore, with competent counsel, it's reasonable to infer that competent counsel would not have failed to respond to discovery, ignored court orders, failed to notify Koi at all that terminating sanctions had been entered against it. So that's how I would respond to that question, Your Honor. And one of your big problems is, though, that there's been no evidence in the record that Koi ever had a real defense to the basic trademark infringement action. Your Honor, that actually goes to lack of notice, because that's not what this motion was about at summary judgment. It was not about whether Koi could prove that it had viable defenses on the merits. But even if you assume that Koi was going to lose on the merits, there's a huge difference between a loss on the merits that reduces a judgment for the cost associated with sales of an allegedly infringing product. With respect to your lack of notice claim, didn't Koi itself argue in opposition to Marin's motion for summary judgment, the correct standard, the Betford standard that it had to meet, and yet it didn't make any effort to meet it? So it argued that the site ER18884 is where, in the opposition, Koi stated the exact standard it had to meet, but made no effort to meet it. Your Honor, reciting the governing legal standard does not show that Koi had noticed that it needed to come forward with all of its evidence to show that it would have obtained a better outcome. How could it be reasonable for an attorney to be aware of the correct governing standard and the burden that it placed on the plaintiff to approve as to the Betford causation and not bring forward evidence to meet that burden? The argument that Koi made in opposing summary judgment was that Marin lawyers had failed to meet the initial burden on the issue of damages. So Koi was raised, this is the legal standard that would govern a trial on which Koi would have the burden of persuasion. There's no doubt about that. But at summary judgment, Koi doesn't have to come forward with any of its evidence on a particular element of its cause of action until Marin lawyers has met its initial burden with respect to that element. And Koi pointed out the legal standard that would govern at trial and also that Marin lawyers had failed to meet its initial burden with respect to its damages. So Koi's opposition brief, in my view, again reflects the lack of notice. As Koi is saying, Marin lawyers, you have failed to even shift the burden to Koi on the issue of whether Koi could have obtained a better outcome. Well, did Koi have defenses to the trademark claims that were brought against it? Your Honor, I would say that the analysis of whether there was a likelihood of confusion, which is one of the principal analyses under the Lanham Act, was not super developed in the record because, again, there wasn't notice to Koi on that issue. But I will say that it's easier, there's more in the record with respect to damages, which again, even if Koi was going to lose on the merits of the Lanham Act claim, the $5.2 million default judgment against Koi was the worst case scenario. Treble damages and no reduction for costs. Normally under the Lanham Act, the plaintiff proves revenues of the allegedly infringing product and then the other side has an opportunity to show, hey, we actually incurred a lot of costs selling those products and therefore. But Koi eventually settled with SPI for 3.5 mil, right? Yes, Your Honor, that's correct. So, I mean, they ended up actually settling for a lot less than that default judgment. That's true that they settled for less than default judgment, Your Honor, but this is also after Koi had filed for bankruptcy, incurred over a million dollars of professional fees in bankruptcy and has considerable costs associated with that bankruptcy that are ongoing. Now, Koi also received over a million dollars from the Bloom Law Firm, is that correct? Yes, Your Honor. And that was where Mastriani went after he left Marin and did most of the harm that resulted in the default judgment. Well, Your Honor, I would disagree that he did most of the harm there. Again, if Marin lawyers at the very outset had said, we are firing Mr. Mastriani because he's abandoned his job and notified Koi that that was the reason that it was firing Mr. Mastriani, Koi would have had an opportunity to hire competent counsel and avoid all of the harm that happened after that. Why didn't Koi submit its cost and deduction spreadsheet in its summary judgment briefing or its motion for clarification briefing? And if you didn't submit it, can we even consider it? Your Honor, this again goes to lack of notice. The reason it wasn't part of the original summary judgment record is because none of the facts in Marin's statement of additional facts could be disputed by showing that Koi would have done better than the final outcome of the SPI litigation. Why didn't Koi submit the evidence after that? Koi talked about it, right, in a number of places, but then never just attached it as an exhibit. For example, your motion for clarification says, well, we had this 9,000-page spreadsheet, but it didn't attach it. Yes, Your Honor. Well, it actually wasn't Koi's motion for clarification. It was Marin lawyers, and in opposing that motion, Koi pointed out to the court that there was additional evidence that it could have submitted. And, Your Honor, I would argue that this, the question that you're asking goes to whether or not Koi was prejudiced, and I think that the case Costello, which is, I believe that it's a Seventh Circuit case, is persuasive authority on this, because in that case, a trustee had sued borrowers on a promissory note, and the borrowers raised an illegality defense to that lawsuit. And the trustee moved for summary judgment. But can we consider it if it's not in the record? I mean, just representing that you have it, and you could have introduced it, but if you never did, can we consider it? I think you can, because I think what it shows, and what's actually already in the record in Koi's interrogatory responses to Marin's interrogatories, is that Koi incurred costs. And it's not unreasonable to infer that. There were costs, and that Koi could have submitted evidence of those costs to dispute the principal argument, the principal theme of Marin's moving papers, which is, sorry, excuse me. Is that in the record for this appeal? The interrogatory responses? Yes. What's the site for that? If you give me a moment, Your Honor, I can tell you. Or you can tell us on rebuttal. I can? You can tell us on your rebuttal, so you can take more time. Thank you. Okay. Thank you for your time.  Mr. Miller? Good morning, Your Honors. Randy Miller for defendants and appellees of Marin Lawyers APC. And thank you for the opportunity to address the panel this morning and welcome Justice Gilmour to California. Just a judge. Gilman. Just a judge. Gilman. And Gilman. Thank you. One of the things that's unusual about the legal malpractice case is that we had the same judge who was the judge in the trier of fact in the underlying case as we did in the legal malpractice case. So it is, as a baseline, it is important to this case and this appeal that Judge Hatter was the judge assigned to the underlying case, SPI versus Coy. And that Magistrate Judge Standish was assigned and made various findings, important findings in the underlying case. And that each of Magistrate Judge Standish's orders were adopted by Judge Hatter. Given that Coy was continuing as a party from the underlying case to the legal malpractice case, Coy was directly aware of each and every one of those orders. They were not secretive. They were a party to the order. They were bound by the order. They were bound by the consequences of those orders and findings. Can I tell you what is of concern to me as I look at these emails between Paul Marin and other of the counsel in his firm, and clearly the Marin Law Firm was aware of Mr. Mastrioni's incompetence and malpractice. Just there's a lot of email. He needs minders. He's dropping the ball. He's missing deadlines. And it is a little unsettling that when Marin's client, I know you're trying to distance yourself and say, no, this was Mr. Mastrioni's client. When Marin's client asked, why is Mastrioni leaving the firm? Is there any reason for concern? Marin withheld the information. It's really, I find that pretty unsettling because that is the firm's client. And there should be some candor there, and there wasn't. No question that there were some issues with Mr. Mastrioni, and there were some internal discussions at Marin Law about Mr. Mastrioni's handling of certain claims. We submitted a expert declaration of Mark Tuft to UFT as part of our moving papers and the motion for summary judgment, talking about that issue and whether it violated the duty of candor or violated a duty of reporting significant issues under the rules of professional conduct or any other standards. And expert Tuft found that Mr. Mastrioni and the firm had complied with all those obligations. Well, what if we don't think so? Because I, like Judge Koh, find this to be a serious breach of the duty of candor. And I'm just wondering what impact that had, the failure to put COI on notice and give COI the opportunity to get different representation had on the ultimate outcome of the lawsuit. I'm not sure there's a full record on that. There is a pretty full record. So, starting with Mr. Mastrioni had been counsel for COI for seven years and a number of matters that was not a new relationship. While he was working at Marin. So, COI was seven years Marin's client. No, he was, COI was only Marin's client for about six months or so. Mr. Mastrioni was the one who was a 35-year experienced lawyer at that point in time, ran his own law firm, was part of a big firm. It doesn't matter, you were on notice that at that moment he was incompetent. I mean, you look at all of these emails, it doesn't matter in the past, he may not have had whatever issues he had at this time, but Marin was on notice. And then what's compounding, unsettling, is you're now getting to use that failure to disclose as your argument to say there's no causation. Because COI kept Mr. Mastrioni when he went to the Bloom Law Firm, that's the cause for all of the harm to COI. But you caused that by not giving the disclosure so they could have actually hired competent counsel. So, it's a little bit unsettling that you're now using the lack of candor as the defense to say, well, everything that happened, happened after he left. We got rid of him. We knew he was incompetent. We wanted him off our books. And so, you know, we just sent him off and never told our client that we had malpractice concerns with him. Well, thank you. Not sent him off, Mr. Mastrioni moved and took the case on his own. Oh, he got a termination letter. So, you're saying he wasn't terminated? Yeah, he had already essentially stopped working on the case before then, the resignation letter or the letter to him for termination. All these letters, I'm sorry, all these emails from Paul Marin of Marin Law Firm say, can we fire Doug? Be subtle about the termination. I mean, I, anyway, I don't want to quibble on that point. But what about the bigger point? You're using the fact that you failed to disclose incompetence and malpractice of the attorney to your client and now that is your defense to causation. Well, I think the defense to causation is not using that at all. The defense to causation is the consequential actions that were taken by Mr. Mastrioni that actually caused the damage that Coy is asserting in the legal malpractice case happened to occur after the fact. So, why isn't that a jury question? You're opposing counsel's right. I guess Judge Standish's order says from the very beginning they failed to do a Rule 26 plan, they failed to meet and confer. So, why isn't that a jury question to parse out exactly what was the cause of the harm pre and post Marin? That was Coy's obligation in the motion for summary judgment. We put it to Judge Hatter to say, here are the facts, here are the timing of those facts. It was raised, everything that you addressed, Justice Coe, was raised by Coy in response to the motion for summary judgment. There's all these bad acts and neglect by Mr. Mastrioni and there were some recognition of that behind the scenes by the law firm and then the relationship ended and Mr. Mastrioni moved on. All of that was before the Judge Hatter in the underlying case. What we focused on, on causation, which is a somewhat different element, it is a separate element of each and every of the claims that Coy brought in the League of Malpractice case, that those damages did not take place or the acts that promulgated those damages did not take place until after Mr. Mastrioni left the Marin Law Group. So, that's a fact and he adopted that exact finding. Coy in that time- Which may not have happened but for Marin's failure to disclose the incompetence and malpractice of their associate, Mr. Mastrioni. They had another year with Mr. Mastrioni where whatever action, this was when he left to go to the Bloom Law Firm. There was another year of that relationship between Coy and Mr. Mastrioni where he continued to make mistakes that actually were the mistakes that resulted in the damage. Had the Marin Firm put Coy on notice that Mastrioni was being fired for malpractice and incompetence, then he wouldn't have been around to make those further errors when he was at the Bloom Firm. There was a long relationship between Coy and Mr. Mastrioni. I don't think that answers it. It doesn't answer it because they may have had a long relationship but this behavior, certainly the Marin Firm was well aware of this incompetent behavior but Coy was not aware of it. They thought they were getting full representation. Well, Magistrate Judge Standish also found that Coy had failed to manage or monitor the litigation to check up on Mr. Mastrioni to determine what the status was. And Magistrate Judge Standish was very critical of their failure to do that. I mean, I practiced law for 16 years. I was at O'Malvin and Myers as a partner. I don't remember my clients. My clients trusted me to handle their affairs competently and I don't recall them wanting to know the deadlines for the Rural 26 meeting, conference. I mean, I was managing the litigation. They weren't managing the litigation. The Coy had discovery. They had to sign declarations responsive to request for production of documents. They had to find and produce the documents. They were actually involved in the process of the case and they were signing declarations that the information that they were providing was true and correct. So it wasn't as though they were oblivious to... Were there any findings that anything they said was true and correct was not true and correct? There was some criticism of that by Judge Standish.  I know it was noted as a basis for the early finding on default. What Judge Standish said is that Coy was in a position to have monitored and I think the phrase that Judge Standish used was they put their proverbial head in the sand and refused to monitor anything about the case. Yet at the same time, they were responding to discovery. They were collecting documents. They were working with counsel, yet they didn't inquire as to what was going on in the case at all. One question on the merits. Do we have anything on the merits as to the meritoriousness or not of the case, SPI versus Coy? As to the merit? Anything as to the merits, the defenses? Well, sadly, no. But that was the issue that we put before Judge Hatter on summary judgment. And that is, is there a consequential or provable loss here such that Coy had the opportunity to establish that they would have done better or that they would have had a better outcome of the underlying case. But there was already findings by Judge Standish, adopted by Judge Hatter, that both were very dubious of whether Coy had any defenses at all. So to answer your question, Justice Wardlaw, the answer is there appear to be no defenses to the underlying case. There were disclosures made to trade organizations where they indicated or admitted that there was significant confusion between the marks. So I think that's exactly why both Judge Standish and Judge Hatter inquired as to whether there was any merit to their defense at all. But in the context of the summary judgment, Coy had the opportunity to put all that evidence on. I mean, happy to go back and talk about this notice issue that they weren't on fair notice that causation was going to be raised. But they had the opportunity to seed the record with all of that. A competent lawyer would have said, OK, I've seen all these rulings from the underlying case. That's troublesome. They're claiming that nothing that Marin did or that Mastriani did while he was at Marin was a consequence. Why is that? They had an order to show cause for failure to answer the complaint. That's extreme. As a district judge, if I had to issue an order to show cause for someone to fail to answer the complaint, that automatically tells me incompetence. I mean, they failed to do the discovery plan, failed to do Rule 26 conference. They didn't file a notice of interested parties. They did not add the paralegal to get UCF notifications. I mean, Hendricks told Peterson at Coy, there's this discovery deadline coming up because you all knew that they were going to miss the deadline. Mr. Hendricks was on notice of Mr. Mastriani's incompetence. So I guess you're saying, oh, nothing of consequence happened. Really? How many of Marin's clients get OSCs for failure to answer the complaint? I'd really like to know that. Because if you think that's nothing of consequence, I kind of agree with Judge Wardlaw. Does Marin do client development by saying you have to keep track of all your own deadlines? You have to monitor our work for incompetence. You have to be on watch, make sure we're not committing malpractice. I would really like to see if that's how the Marin law firm operates with its other clients. Let me address your remarks on whether these were acts of Mr. Mastriani that were consequential. I use consequential with respect to whether there was some harm or result or loss from those. These things happen every day with law firms. Something doesn't get in this calendar or something. Does that happen all the time with Marin law firm? No. They get OSCs all the time because they fail to answer complaints on behalf of their clients? No. And that's why there was certainly cause for some internal concern. Magistrate Judge Standish says, quote, beginning with COI's failure to participate in the required Rule 26 conference of counsel. That immediately makes an impression with the judge about what kind of case this is and who these parties are and subjects you to strict scrutiny. Once you start screwing up like this, people know, okay, these are probably not competent lawyers. Right. Can I ask another question? This is another question. Doug Mastriani is a party to this case, right? He is a party to the legal malpractice case. He never appeared and he's the subject of a different appeal that I'm not arguing today. There's a different, because I'm wondering why he's not here. Uh, we did not represent him in the legal malpractice case. I believe he never responded or appeared in the legal malpractice case. He's made certain applications with respect to some matters that happened in the underlying case, but he's not an appeared operative party in this case. So you're saying the underlying case is also being appealed? There's an aspect that related to Mr. Mastriani and I'm not all that keen on exactly how Mr. Mastriani has approached it, but I think the contention is that he has an appealable issue with respect to the sanctions that were awarded or that were imposed against him in the underlying case. Okay. That has nothing to do with the legal malpractice. But that's separate from these two appeals? Yes. Yeah. Yeah. And again, he's not our client and he's taken a different path. Okay. All right. You're over your time. So if you want to sum up, that would be great. Thank you. I just want to address a couple of my colleague, Mr. Epstein's remarks on his opening, where he asserted that there was lack of notice. I find that hard to understand. Causation is causation. There are many different standards that come up within sort of true legal malpractice cases. We've all heard them. Case within a case, better result, those types of things. But the California Supreme Court in Viner v. Sweet made it very clear that those are just names for the same thing, and that is causation. Every one of the claims in the Coy case against Marin had a causation element. Our essential response to that was that you can't prove that any of your damages were actually caused by actions or omissions of Mr. Mastriani while he was affiliated with Marin Law. They had opportunity. They had notice and opportunity to have put that evidence before the court. A competent lawyer would have said, we need, now that we've seen these orders from Judge Hatter and Judge Standish, we need to load up on our causation evidence here and show that there would have been a better outcome or else we're going to lose that. None of that took place. That was the basis for Judge Hatter's decision. Based on cell attacks, Judge Hatter found that the burden had shifted to Coy to come forward with evidence to establish a prima facie case on each of his causes of action, and it did not. It's as simple as that. All right. Thank you, counsel.  Thank you, Your Honor. Mr. Epstein, I think, did he use all of his time or did he save? Okay, I'll give you a couple minutes to respond. Thank you, Your Honor. I wanted to first point out where in the record the interrogatory responses to Marin Lawyers interrogatories are, and it's 10 ER 2272 through 2424. And with respect to the issue of notice, again, just to clarify, Coy did not have notice of the theory of causation that Marin Lawyers presented in moving for a summary judgment. Or, sorry, Coy had notice of only the theory of causation that Marin Lawyers presented. They pointed to certain responses to interrogatories and used that as a timeline of when Mastroianni committed these various acts and when he was working at Marin Firm. That's what they did to support it. To support, sorry? Their claim. They pointed to responses to interrogatories. Right, but the entire theory that they presented was just that all the bad stuff that led to the default judgment happened after Mr. Mastroianni left. They were not challenging Coy's ability to prove a better outcome. And the district judge's one sentence finding that Marin had met its initial burden without any explanation does not engage with the Ninth Circuit's understanding of the initial burden, which is that you have to either produce evidence that negates an essential element of the plaintiff's cause of action or point to evidence in the record showing that the plaintiff can't establish that element. And as far as the better outcome theory, there's nothing to that effect in Marin's moving papers. And so, therefore, the burden, the initial burden, as Coy argued in opposing Marin's motion on the issue of whether Coy could show its damages never shifted to Coy. And that's why there is no evidence in the record, really, about the merit of Coy's claims. So your argument is that Judge Hatter erred by making that finding? That's one of the arguments, yes, Your Honor. Okay. All right. Well, now you're over your additional time. Well, thank you. Thank you.  Coy Design versus Marin Lawyers will be submitted.
judges: Gilman, WARDLAW, KOH